Hart, J.,
 

 concurring in part and dissenting in part. I concur in the syllabus of this case and in the judgment, except as it relates to the sustaining of exceptions to the account of the appellant with reference to the retention in the trust, shares of its own bank stock.
 

 At the time of the death of Ella A. Stone, she owned stock in the principal banks which were then being merged into The Union Trust Company. The merger was consummated nine months later and there was issued to the executor of her estate 1,517 shares of The Union Trust Company in lieu of the holdings of her estate in the merging banks. The executor sold 1,000 shares, the proceeds of which were distributed through her estate and 517 shares were placed in the Ella A. Stone trust as a part of the trust estate. Later 17 shares were sold while the remaining 500 shares were held in the trust. Still later the par value of this stock was reduced to $25 per share and the shares were increased to 2,000 which were held until the bank was closed for liquidation.
 

 None of these shares was purchased by the bank or by the bank as trustee. Ella A. Stone had inherited a part of this stock from her husband who had been prominently connected with the merging banks, and the various heirs of Ella A. Stone for whom the exceptions in this case were filed, likewise retained in this bank in their own right stock of the same character which they had acquired both by inheritance and by purchase.
 

 
 *308
 
 •There is now no claim made that The Union Trust Company engaged in self-dealing as to this stock or that it acted negligently, or in bad faith, in retaining it. Such claims were originally made by the exceptor but were abandoned in the Court of Appeals. The sole claim now made is that the bank was in a position of divided loyalty in retaining its own stock as a part of the trust.
 

 Similar situations arose in the cases of
 
 In re Estate of Riker, Jr.,
 
 124 N. J. Eq., 228, 1 A. (2d), 213, and
 
 In re Griggs,
 
 125 N. J. Eq., 73, 4 A. (2d), 59. In the former of these two cases, a national bank which was a trustee was converted into a trust company and then merged with another trust company. It held in a trust shares of its own stock as a national bank and exchanged them for trust company shares upon the reorganization and merger, and thereafter retained the trust company shares as an investment of the trust fund. The court held that there was no conflict of interests between the trustee and the beneficiaries appearing from the fact that the shares were a part of the stock issue of the trustee. A similar situation is presented in the second case.
 

 The trust created by the will of Ella A. Stone provided that:
 

 “Said trustee shall have absolute control of said trust estate, and shall handle, manage, lease, bargain, sell, transfer, convey, mortgage, encumber, allot, invest and reinvest the same or any part thereof upon such terms, under such conditions and
 
 in such securities as it in its discretion shall deem best, all statutory limitations and restrictions as to the investment of trust funds now in force and that may hereafter be enacted by the state of Ohio being hereby expressly waived by me
 
 # * (Italics mine.)
 

 In my judgment, this gave the trustee the right to hold its own shares in the trust, especially when they were owned by the party creating the trust at the time
 
 *309
 
 of her death. There was no self-dealing or
 
 mala fides
 
 of the trustee in connection with the holding of these shares. There was no dealing in its shares by The Union Trust Company which would tend to prevent loyalty to its trust. In my opinion, it could only be surcharged in case it negligently retained these shares, and the record does not establish any such negligent conduct.
 

 Professor Scott in 2 Scott on Trusts, 886, Section 170.15, says:
 

 “Where the purchase or retention by a corporate trustee of its own shares is authorized by the terms of the trust, the authorization is not ineffective as contrary to public policy.”
 

 3 Bogert on Trusts and Trustees, 2051, says:
 

 “Trustees are often authorized by the settlor to
 
 retain
 
 part or all of the
 
 investments
 
 made by him and transferred by him to the trustee. Such clauses are of undoubted validity in protecting the trustee in holding the investments mentioned, at least in the absence of very clear evidence that the retention is to have disastrous consequences.”
 

 I think that the broad intention expressed by the testator in creating the trust was to give the trustee absolute control of the management of the trust so long as it acted in good faith and that the authorization was broad enough to warrant it in retaining the bank shares in the trust. In fact, it is not necessary that the authority to retain specific shares in the trust be expressly given.
 

 Judge Spear of this court in the case of
 
 Willis, Admr.,
 
 v.
 
 Braucher, Gdn.,
 
 79 Ohio St., 290, 87 N. E., 185, 44 L. R. A. (N. S.), 873, said: “We do not agree with the proposition that in order to authorize a trustee to invest trust funds otherwise than in accordance with the statute the instrument creating the trust must specify the particular securities to be purchased; it is sufficient if the instrument designates the test to be
 
 *310
 
 applied. In the present ease the will does so designate by providing that investments may be made in such manner as the trustee may think best.”
 

 The Court of Appeals in passing on this question after consideration of all the facts said:
 

 “In our judgment, the will gave ample authority for the trustee to retain this stock. It was not guilty of a breach of faith or of loyalty to the trust in retaining it. Moreover, the beneficiaries under the trust are, in our judgment, by reason of the facts hereinbefore cited, estopped from complaining.” With this expression of the court I agree.
 

 The evidence shows that four of the beneficiaries of this trust accepted 48 different dividends on the stock of The Union Trust Company in this trust from 1921 on. Up to 1928 the stock paid a quarterly dividend amounting to 10 per cent per annum. Between January 1, 1928, and April 1, 1932, dividends of 12 per cent per annum were paid. During 1932 dividends of seven per cent were paid. From January 1, 1921, to the date the bank closed, February 27, 1933, these four beneficiaries received by way of income distribution dividends on the bank stock held in the trust, 125 per cent of the par value of the stock. These beneficiaries were constantly advised of the retention of the bank stock in this trust and made no objections thereto. Each of the four received four separate inventories of the trust estate; five partial accounts filed by the trustee; and photostatic copies of over 50 original ledger sheets of the Stone trust delivered quarterly. All of them held stock of The Union Trust Company in their own right up to the time the bank closed and some of them purchased additional stock of The Union Trust Company while this trust was being administered. Under such circumstances, in my opinion, these beneficiaries are not in a position to complain, or to surcharge the bank with the loss incurred in the holding of this stock, to the disadvantage of other creditors of the bank.